FRINK v. ROE and Others.*

No. 8879; June 29, 1885.

7 Pac. 481.

**Power of Attorney—Revocation by Death.**—A power of attorney to convey becomes extinct by the death of the constituent, although the power be irrevocable, and no title passes by a deed subsequently made by the attorney.

**Power of Attorney—Conveyance by Attorney in Payment of His Debts.**—Where the intention in executing a power of attorney was to give the attorney control of the property for his own benefit, he may convey the same in payment of his own debts.

**Evidence.**—Declarations of an Owner of Land in Disparagement of his title are admissible in evidence against him, and all claiming under him, while the legal title remains in him; but such declarations are inadmissible where made by him after he has parted with his title.

APPEAL from Superior Court of the City and County of San Francisco.

E. A. & G. E. Lawrence for appellant; McAllister & Bergin and T. B. Bishop for respondent.

*For subsequent opinion in bank, see Frink v. Roe, 70 Cal. 296, 11 Pac. 820.

THORNTON, J.—The sale under-the execution issued on the judgment in Smith v. City of San Francisco was regular, and passed all the title which the city had on the day of sale. The sheriff's deed passed such title to the purchaser, and such title came regularly by proper conveyances and vested in D. B. Rising, under whom both of the parties to this action claim. While Rising held the title, he executed to James H. Hodgdon a deed of release and quitclaim, bearing date the 30th of March, 1853, which was recorded on the same day, by which, for a consideration of seven thousand nine hundred dollars, he conveyed to Hodgdon the parcel of land in controversy, together with other parcels. On the same day Hodgdon executed to Rising, for and in consideration of five dollars, paid by the latter to him, a letter of attorney, by which he constituted Rising his attorney in fact, "without any revocation or power of revocation" on the part of the constituent, and authorized the attorney so constituted to grant, bargain, and sell the land conveyed by the deed to Hodgdon, just above mentioned, and other lands just before conveyed to him, some of them by Rising, and others by Rising and Raphael Schoyer. Rising was by the same letter authorized to convey said land, when sold, to the purchaser.

For what reason and with what intent were those papers executed? Why were these lands conveyed to Hodgdon, and at the same time a power by contract for a valuable consideration taken back by the grantor from his grantee? These documents on their face suggested inquiry. They may have been made to assume the form in which they are presented for various purposes. It would be idle to say that they were executed without a definite purpose and intent. It is unnecessary to speculate or hazard conjectures as to what the purpose and intent were, as we have as to that the testimony of a witness who testifies clearly and distinctly as to the purpose and intent with which they were executed; and it may be added here that the testimony of this witness is without contradiction, and is the only evidence on the point. The witness referred to, Hiram C. Clark, states in his testimony that he was, prior to and during March, 1853, an attorney and counselor at law, practicing his profession in the city of San Francisco; that he drew the deed and the letter of attorney above mentioned, bearing date the 30th of March,

1853, at the request of Rising; that he never saw Hodgdon until he came to execute the deed, which was done in his presence; that he was, during the period of time above mentioned, a notary public in the city aforesaid, and took the acknowledgment of Hodgdon to the letter of attorney, and of Rising to the deed referred to. It may be stated here that these documents show that the acknowledgments of their execution appended to them were taken by Clark as notary. The witness further stated that he, at the time referred to above, was the attorney of Rising and Schoyer; that Rising alone consulted with him as to the transaction; that when Hodgdon called to execute and acknowledge the instruments he stated to him their contents; that Hodgdon sat down and made his signature, and he took his acknowledgment; that he was paid for his services in the business by Rising, Casselli & Co.; that Hodgdon paid Rising nothing in his presence; and that Rising told him at the time that Hodgdon was then a clerk for Rising, Casselli & Co. The further testimony of this witness we extract from the record. In making this extract we omit certain objections made by counsel for defendants, which are not in any sense important or material. The following is the testimony referred to:

''Question. In regard to the power of attorney, that was from Hodgdon to Rising, dated on the 30th of March; it is irrevocable in its character. I will ask you if you ever had any conversation with Mr. Rising or with Mr. Hodgdon, with reference to the preparation of that power of attorney? Answer. I had a conversation, and I think Mr. Rising asked my advice as to giving this power of attorney. Mr. Rising didn't profess to be a lawyer; he would ask me these questions and I would answer them. I gave him advice as to power of attorney. Q. Now, what transpired at that time? I want to get out all that transpired between you and him with reference to that, as near as you can. A. I looked upon it as a pretty important matter—conveying so much real estate to Mr. Hodgdon. It was an important transaction, and I remember of advising Mr. Rising to keep the power in his own hands, and he wanted to know what instrument to take back—he was going to make the conveyance. Q. Take back from Mr. Hodgdon? A. From Mr. Hodgdon, for he was to manage the affair. Q. Mr. Rising was to man-

age the affair? A. Yes, that is what he told me—to manage the matter; and then I told him that I could prepare, I thought, a power of attorney that would make his safe. Q. Safe in regard to what matter? A. Well, putting this title into Mr. Hodgdon's hands; he was conveying a good deal of this property, if I remember right, in that deed; and then he would like me to still draw some instrument by which he would be secured and still manage the property. Q. Be secure in the title? A. Yes, sir. Q. Or secure in the ownership? A. Well, in his rights; he claimed he had a right. Q. Well, now, can you tell us what he represented to you as being his rights in the property after the conveyance was made to Mr. Hodgdon? I want to get at the bedrock, if you can. A. It was a wish to manage the property—to make sales; they were to convey and reconvey. I don't know; these conveyances were jumping around, and he wished still to retain control of the property; that is what he told me— his precise language I don't remember. Q. Did he still retain control of the property after the conveyance? A. I could not answer that. Q. Will you state again with regard to what he wanted? A. Before you take that down— I don't know that this will be responsive. He claimed the management of the property. That would be the word I would use there. Q. At whose instance was this irrevocable power of attorney prepared—at your own, or that of Mr. Rising? A. It was at Mr. Rising's, as I stated; Mr. Rising ordered it to be done. Q. Did Mr. Rising consult you with reference to taking a reconveyance from Mr. Hodgdon of the property? A. He wanted some—he wanted the property in his hands; that is what he said substantially. I don't give his exact language; that was precisely the idea he conveyed; then he left to me to retain that power. The power of attorney was drawn at my suggestion. Q. Did the question come up which would secure him the best,—a power of attorney, or deed of conveyance from Mr. Hodgdon back to him; not to be recorded? A. Yes; that was talked of. It was talked over, but it was left to me the kind of instrument which would protect his rights. Q. Left to you to draw an instrument which would protect his rights in the property? A. Yes, sir. Q. And those rights were the management and control of the property, was it? A. Yes, sir; he can

make sales, and Schoyer makes sales.  Q.  Was it not at that time talked of by him that Mr. Hodgdon was about to leave the state?  A.  I have no recollection—he spoke of Mr. Hodgdon going away—no present recollection.  Q.  Do you know why a five dollar consideration was put into the power of attorney?  A.  To make it a power of attorney coupled with an instrument.  Q.  That was the object?  A.  That was the object; yes.''

It is clear from this testimony that the documents were drawn and executed in the form in which they are presented to us in the record, with a view to give Rising the control of the property, so that he might dispose of it in any mode he might desire.  No doubt it was the intention to vest in Rising an interest which would fasten the power granted to him by the letter of attorney with such interest.  This, the attorney stated, was his object in inserting the consideration of five dollars in the letter of attorney, and he so advised Rising. The means taken did not in law create such an interest, within the rule laid down in Hunt v. Rousmanier, 8 Wheat. (U. S.) 174, 5 L. Ed. 589, and Barr v. Schroeder, 32 Cal. 618, for the letter of attorney transferred no interest in the land mentioned in it to Rising.  But the documents and the testimony show what was the intention of the parties—that Rising was to have the exclusive power to dispose of and convey the land. This was what the parties, Hodgdon and Rising, wished to accomplish.  The power to sell was purchased by Rising of Hodgdon for a valuable consideration.  Under the circumstances it was a contract between Rising and Hodgdon that the former should have the exclusive and irrevocable right to sell the property described in the letter; and as it was intended to give Rising the sole control of the property, it invested him with a right to the proceeds of the sale.  If the arrangement did not effect this, it was a mere idle formality.  It appears that under this letter of attorney Rising, as the attorney of Hodgdon, and in his name, executed two deeds conveying the land in controversy.  The first in point of time was executed to David S. Turner and Samuel Hort, on the tenth day of October, 1853, on which day the letter of attorney was duly recorded.  The deed to Turner and Hort was recorded on the 13th of October, 1853.  The second deed was executed to Rufus Wade, bore

date the 28th of May, 1866, and was recorded on the 31st of same month.

The last-mentioned deed will be considered first. Hodgdon had departed this life in 1862. So far as regards the power to convey, this deed passed no title. The power granted by the letter of attorney, though irrevocable, became extinct by the death of the constituent. The law is so ruled in the case of Hunt v. Rousmanier, supra, where the rule and the reasons of its adoption are fully stated. The power under consideration here, though irrevocable by the constituent during his lifetime, is not one coupled with an interest, and therefore does not survive the author of it. It ceased upon his death. The claim of plaintiff to recover on the deed to Wade cannot be sustained. It appears that the deed to Turner and Hort was an assignment to them in trust for the benefit of the creditors of Rising, Casselli & Co., of which firm D. B. Rising was a member. It is argued that this deed is a nullity, because it was not made in accordance with the power, as the power did not authorize the attorney in fact, Rising, to sell and convey his property to pay his debts. Conceding this to be ordinarily correct, still as we have determined that the arrangement under which the letter of attorney was executed by Hodgdon to Rising was intended to give the latter the control of the property for his own benefit, we are of opinion that this rule has no application here; that Rising had the full power to sell to the trustees; and that his conveyance to them was valid to transfer the title to them. The plaintiff connected himself with Hort and Turner by proper mesne conveyances, and, in our judgment, through it was invested with title to the property in suit, if the defendants had notice of the agreement made between Hodgdon and Rising at the time of the execution of the deed of the 30th of March, 1853, by the latter to the former, and of the letter of attorney above spoken of, bearing date on same day. On this point we are of opinion that the deed and letter of attorney just above referred to, which were on record long before [Howard] in 1870, the grantor of defendants, purchased, together with the deed to Turner and Hort by Rising under the power, which was also on record, were sufficient to put a purchaser from Hodgdon, or anyone claiming under such

purchaser, on inquiry as to the facts and circumstances under which such documents were executed.

The peculiarity of these papers would at once suggest an inquiry, to a person of ordinary prudence, why and for what purpose were they executed? It does not appear that any inquiry was made at all. It was assumed that the title was in the devisee of Hodgdon, and a deed was procured from such devisee, under which defendants endeavor to protect themselves. There are other circumstances which might have been discovered on inquiry, if it had been made. It would have been ascertained that Hodgdon left this state in 1853, went to the east, from which he never returned, and died in Philadelphia in 1862. During this period he paid no attention to the property, and acted as if he had no interest in it. After his death nothing was done in relation to the land in suit until 1870, when Howard, under whom defendants claim, bought it, among other parcels of land situate in the city of San Francisco, from the devisee of Hodgdon, and procured from her a conveyance of it. It does not appear that either Howard, or anyone claiming from him, ever made any inquiry as to the circumstances under which the deed to Hodgdon was executed by Rising, or the letter of attorney executed by Hodgdon to Rising. Under these circumstances the court is of opinion that Howard, and all those claiming under him, must be held to have had notice, when they took the deeds executed to them, of all the facts and circumstances, and the agreement under which the deed was executed under the letter of attorney by Rising to Turner and Hort, which deed was, in our opinion, valid, and transferred the title to them. The statute of frauds offers no difficulty in the case. The contract between Hodgdon and Rising became executed by the conveyance made to Turner and Hort in October, 1853, by Rising, under power from Hodgdon. After that time the statute of frauds could not be invoked by Hodgdon, or anyone claiming it, even conceding, but not intending to hold, that the statute before that date would have been a bar to the specific execution of the contract referred to.

As the case goes back for a new trial, it is proper to pass on some other questions raised on the record. The plaintiff offered to prove by a witness certain oral declarations

of Hodgdon, made in the month of April, 1853, in disparagement of his (Hodgdon's) title to the property involved herein. This offer was made by plaintiff when making out his case, and was renewed in rebuttal. They were ruled out on both occasions, and plaintiff excepted. The court committed no error in rejecting the offer when first made, for it did not then appear that the title had ever been in Hodgdon. But the defendants in putting in their testimony, offered the deed of the 30th of March, 1853, executed by Rising to Hodgdon, by which the title was transferred to the latter. His declarations made after that time, while the legal title remained in him, in disparagement of his title, were admissible against him and all claiming under him: 1 Greenleaf on Evidence, sec. 109; Code Civ. Proc., sec. 1849. The legal title vested in him on March 30, 1853, and passed out of him by the deed executed by him through Rising under the letter of attorney to Turner and Hort, on the tenth day of October, 1853. The declarations made in 1859, after the last-mentioned date, were not admissible. Those made in April, 1853, were admissible, and the court erred in excluding them: McFadden v. Wallace, 38 Cal. 51; McFadden v. Ellmaker, 62 Cal. 348.

For the foregoing reasons the judgment is reversed and the cause remanded for a new trial. Ordered accordingly.

We concur: Sharpstein, J.; Myrick, J.