16866

## MILLER v. MILLER
(82 S. E. (2d) 119)

*Messrs. Nelson, Mullins & Grier, Frank L. Taylor,* and *Eugene F. Rogers,* of Columbia, *for Appellant,*

*Messrs. R. K. Wise, Arthur T. Cole, Jr.,* and *A. Birge Wise, Jr.,* of Columbia, *for Respondent,*

May 11, 1954.

OXNER, Justice.

This action was brought by the wife for a divorce *a mensa et thoro* on the ground of physical cruelty. The husband denied this charge and interposed a counterclaim in the nature of a cross-action, wherein he sought a divorce *a vinculo matrimonii* on the grounds of physical cruelty and habitual drunkenness. He was later permitted to amend his counterclaim by adding desertion as a third ground for divorce. All of these charges were denied by the wife in her reply.

The case was referred to the Master who recommended that the relief sought by the husband be denied; that the

wife be granted a divorce *a mensa et thoro* on the ground of physical cruelty; that the husband be required to pay alimony in the sum of $50.00 per month and to reimburse his wife for certain medical expenses, amounting to $774.20, which should have been paid by him; and that the husband be further required to pay reasonable compensation to the wife's attorneys for prosecuting the action, the amount thereof to be later determined. Both parties filed exceptions to the report of the Master. His conclusion was affirmed by the Circuit Judge except as to the amount of alimony and the date from which it should be paid. The Circuit Judge increased the amount of alimony to $100.00 per month, retroactive to January 21, 1952. He then recommitted the case to the Master for the purpose of taking testimony as to the amount of attorneys' fees to be allowed the wife's attorneys and reporting his conclusion thereabout. From this order, the husband has appealed.

The parties were married on July 31, 1948, he for the first time and she for the second. Appellant, a retired mail carrier living on a farm owned by him near Columbia, was then about sixty years of age. His principal source of income consisted of retirement and disability benefits paid by the Government. Respondent, who is some fourteen years younger than appellant, has been for a number of years an employee of the Veterans Administration. Her first husband was a World War I veteran and after his death she received a pension of $75.00 per month, which terminated when she married appellant.

After their marriage, this couple resided for several months in respondent's apartment in the City of Columbia, after which they moved into a nice home on the farm of appellant upon which respondent expended around $500.00 in repairs and furnishings. She continued to work for the Veterans Administration. Appellant raised chickens, hogs and cows on the farm, from which he received a small income. During May, 1950, respondent injured her back in

a fall which necessitated using braces for about three months and caused her to lose four months from work.

Although the parties had their differences, there was no serious discord until December, 1950, when, according to respondent, her husband cut off the radio in her bedroom one night and upon being asked why he did so, "flew into a rage and twisted my right arm until I could hardly use it for several days", which made it necessary for her to resume wearing a brace.

The next alleged act of cruelty occurred just before breakfast on May 7, 1951. Respondent testified that when she entered the kitchen, her husband cursed her and knocked her against the pantry door. She immediately consulted her physician who testified that "x-rays of the chest revealed a fracture of the seventh rib on the right side." Appellant gave the following version of this incident: "We were out in the kitchen cooking and going backwards and forwards from the sink to the stove and she would go right between me and the sink or the stove and I gave her a push and she went against the door and broke that towel rack."

The third physical encounter occurred on July 3, 1951, when it is conceded that they had "quite a fight". During the early part of the evening appellant and a next door neighbor went to a baseball game. Respondent became irked because her husband did not arrange for her to go along. He returned about midnight. There is quite a conflict in the testimony as to who was the aggressor. Respondent testified that when her husband returned, she was reading in her bedroom. She was unable to go to sleep and decided to turn on the radio. Her husband became irritated, seized the radio, dropped it on the floor, and knocked her down. She sought to defend herself and a lengthy fight ensued. Respondent says she was slapped and struck a number of times. According to appellant, upon returning home about midnight, he first went to his wife's bedroom. He found her angry and went to his own bedroom. His wife then

turned "the radio on full force." This kept him from sleeping and he went out on the porch. Finally, about one o'clock he disconnected the radio and says as he was returning to his room, his wife struck him with a smoking stand, and then bit and otherwise assaulted him severely. It seems to be undisputed that both parties were rather badly beaten and bruised. When the fight was over, respondent called a member of the State Constabulary but he was unable to come until the next morning.

It seems to be admitted that there was no cohabitation between the parties after the foregoing incident. In fact, respondent says there had been none since May 1, 1951. Although after the altercation of July 3, 1951, respondent for the most part secluded herself in her room, she continued to live in the home until July 21, 1951, when she left. She testified that she could not move sooner because of her inability, due to the housing shortage, to secure a room or an apartment around Columbia In the following August respondent had to undergo a gallbladder operation. While in the hospital, she was visited by appellant several times, but their differences were never reconciled. As heretofore pointed out, this action was commenced in December, 1951.

On the foregoing conflicting evidence, the Master found that respondent had sustained her charge of physical cruelty and that she was justified in leaving the home on July 21, 1951 because she could no longer live with appellant "in safety of her health." These factual conclusions were affirmed by the Circuit Judge. On this appeal there must be applied the well-settled rule that in an equity case, findings of fact by a master or a referee, concurred in by a circuit judge, will not be disturbed by this Court unless it appears that such findings are without evidentiary support or are against the clear preponderance of the evidence. *Machado v. Machado,* 220 S. C. 90, 66 S. E. (2d) 629.

At the outset appellant invokes the well-known maxim of equity that "he who comes into equity must come with clean

hands." It is argued that the application of this principle is fully warranted by the statement of the Circuit Judge that "no one can read the record here and reach the conclusion that either (of the parties) is wholly blameless in this controversy."

While we have held that when a wife seeks alimony, "she must come with clean hands", *Nicholson v. Nicholson,* 115 S. C. 326, 105 S. E. 700, we do not understand the rule to require, as counsel for appellant seem to think, that the complainant be entirely blameless. A statement to that effect in *Hair v. Hair,* 10 Rich. Eq. 163, was construed by Mr. Justice Woods in *Levin v. Levin,* 68 S. C. 123, 46 S. E. 945, 948, as not meaning "that a wife must be perfect—her conduct absolutely free from fault—in all distressing circumstances." In *Loughran v. Loughran,* 292 U. S. 216, 54 S. Ct. 684, 689, 78 L. Ed. 1219, Mr. Justice Brandeis said: "Equity does not demand that its suitors shall have led blameless lives." Most marital difficulties are to some extent the fault of both parties. We think the correct rule is stated in Nelson on Divorce and Annulment, Second Edition, Volume 3, Section 32.21, as follows: "While a wife need not be wholly blameless in order to recover, if she is chargeable with substantial fault or misconduct, either by way of act or omission, which materially contributed to the disruption of the marital relation or induced the action by the husband upon which she relies to justify their separation, she is precluded from maintaining a proceeding for separate maintenance." Also, see 27 Am. Jur., Husband and Wife, Section 408; 17 Am. Jur., Divorce and Separation, Section 615; Annotations 6 A. L. R., page 22, and 10 A. L. R. (2d), page 489.

In line with the foregoing, "the general rule is that a divorce will not be granted on the ground of cruelty when the cruelty was provoked by the misconduct of complainant." 27 C. J. S., Divorce, Sec. 56c (1). However, "that there was some provocation will not disentitle complainant to relief, if the retaliatory cruelty or indignities

complained of were out of all proportion to the provoking conduct." Nelson, supra, Volume 1, Section 6.15, page 250. The conduct of the party who claims to have been provoked may be out of all proportion to the provocation, in which event provocation does not bar an action for divorce. *Popescu v. Popescu,* 46 Cal. App. (2d) 44, 115 P. (2d) 208.

It seems clear under these authorities that the Circuit Judge was not compelled to deny relief to respondent merely because he concluded that she was not entirely blameless. We have confined our summary of the evidence largely to the alleged acts of cruelty and have not undertaken to review numerous other complaints made by the parties. We may say, however, that there is evidence tending to show that appellant was extremely parsimonious; that respondent was strong-willed and had a high temper; and that at times both were disagreeable and inconsiderate. But the Master and the Circuit Judge were fully warranted in concluding that respondent was guilty of no misconduct justifying an assault. While it appears that the altercation of July 3, 1951, was participated in freely by both parties, the Master found that appellant was the aggressor and in effect that the wife was acting in self-defense.

It is next contended that respondent should be denied alimony upon the ground that she, without justification, left and has refused to return to a suitable home provided by her husband, and further that the Court below should have granted appellant a divorce on the ground of desertion. As previously pointed out, there is a sharp conflict in the evidence on this issue. The Master found, which was affirmed by the Circuit Judge, that respondent was justified in leaving on account of the "cruel and inhuman treatment inflicted upon her" by appellant and that she could no longer live in safety in this home. We cannot say that this conclusion is against the clear preponderance of the evidence.

It is argued that even if respondent was justified in leaving her husband, she is not entitled to alimony because of her refusal to accept a bona fide offer by

him to take her back and resume marital relations. This question does not appear to have been raised in the Court below. Not only was no offer of this kind made in the answer but, on the contrary, appellant alleged that "it is impossible for the parties to reside together as husband and wife." This defense is not mentioned in the Master's report, appellant's exceptions to this report or in the circuit decree. It cannot be raised here for the first time. Apart from this, however, the bona fides of this offer is open to serious question. It is true that respondent admitted that while on a visit to her in the hospital during the fall of 1951, her husband asked her "to come back out there." However, this gesture of peace is hardly consistent with the action of appellant several months later when he stated in his counterclaim that it was impossible for them to reside together and made the unfounded charge against his wife of habitual drunkenness. In his testimony he frankly stated: "I don't consider her a drunkard but she used some dope of some kind." Nowhere do we find where his invitation for his wife to return was accompanied by any expressions of sorrow or penitence for the cruel treatment which the Court below found that he had inflicted upon his wife, or any assurance that his cruelties would not be repeated. We are not inclined to think in view of all the circumstances that the testimony sustains this defense. *Levin v. Levin, supra,* 68 S. C. 123, 46 S. E. 945; *Mincey v. Mincey,* S. C., 80 S. E. (2d) 123.

Finally, it is contended that the earnings of respondent are approximately that of her husband and that alimony should be denied upon the ground that she is fully able to support herself, and that in any event the amount allowed by the Circuit Judge is excessive. It is further argued that appellant should not be required to reimburse his wife for the medical expenses. It appears that appellant receives monthly $138.00 from the Post Office retirement fund, $40.25 from U. S. insurance benefits and $60.00 as a non-service connected pension from the Veterans Administration, making a total of $238.25 per month, some

of which is not subject to income tax. He owns free of encumbrances 62 acres of land about five miles from Columbia, which the Master found to be worth at least $30,000.00. From this farm he also receives a small income. Respondent's present salary as an employee of the Veterans Administration is $250.00 a month. It appears that her health is not good. The $60.00 per month non-service connected pension is paid to appellant by reason of his being married and could not be drawn if he were single. When respondent married him, she lost the income of a $75.00 a month which she was receiving as the widow of a deceased veteran. Under all the circumstances stated, we think the Court was fully justified in allowing alimony in the sum of $100.00 per month and requiring appellant to reimburse his wife for the medical expenses.

There are several other exceptions which presumably have been abandoned since they were not argued.

The order appealed from is affirmed.

STUKES, TAYLOR and LEGGE, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.