231 S.C. 134 (1957)
97 S.E.2d 505
IN re GEORGE S. DePASS, Petitioner-Appellant.
VAUDIE HARRIS HYDER, Petitioner,
v.
LLOYD C. HYDER, Respondent.
17278
Supreme Court of South Carolina.
April 3, 1957.
Messrs. DePass & DePass, of Spartanburg, for Appellant.
*135 Messrs. Sam R. Watt and Chester D. Ward, Jr., of Spartanburg, for Respondent.
April 3, 1957.
MOSS, Justice.
The sole question presented by the appellant is whether a husband can be held liable for attorney fees of counsel employed by the wife in a suit for separate maintenance and support, where the husband and wife became reconciled prior to the completion of the action.
It appears that Vaudie Harris Hyder and Loyd C. Hyder were married on May 30, 1931, and lived together as husband and wife until they finally separated on April 8, 1956. The wife instituted an action against the husband for separate maintenance, support and attorney fees pendente lite and permanent. The action was instituted on May 4, 1956. Judge C. Bruce Littlejohn, the Resident Judge of the Seventh Circuit, did on May 16, 1956, award separate maintenance in the sum of $20.00 per week, and the sum of $100.00 as a fee for the wife's attorney, pendente lite. Thereafter, the petition of the wife was amended to ask not only for separate maintenance and support but also for a division of the property, title to which was held by the husband. This amended petition was served on May 22, 1956. On June 15, 1956, the husband and wife became reconciled, and the wife went back to live with the husband, and notified George S. DePass, her attorney, "to drop all further legal action."
The petitioner below, George S. DePass, and the appellant herein, after the husband and wife had become reconciled, *136 asks that the court award him $400.00 additional fees. The husband resisted the allowance of any further attorneys fees to his wife's attorney, and alleged that because of a reconciliation of the parties, petitioner was not entitled to further compensation. The matter was heard by the Honorable G. Badger Baker, Presiding Judge of the Seventh Circuit, and on November 6, 1956 he issued an Order refusing to allow George S. DePass any additional fees. George S. DePass appeals to this Court from such Order.
As is above stated, this is an action for a divorce a mensa et thoro, and it is provided in Section 20-113.1 of the 1952 Code of Laws of South Carolina, that:
"In all action for divorce a mensa et thoro, allowances of alimony and suit money and allowances of alimony and suit money pendente lite shall be made according to the principles controlling such allowance in actions for divorce a vinculo matrimonii."
It is interesting to note the history of divorce a mensa et thoro. It is set forth in 2 Bouv. Law Dict., Rawle's Third Revision, p. 3044, as follows:
"By the ecclesiastical or canon law of England, which had exclusive jurisdiction over marriage and divorce, marriage was regarded as a sacrament and indissoluble. This doctrine originated with the church of Rome, and became established in England. After the reformation it ceased to be the doctrine of the church of England, yet the law remained unchanged until the statute of 20 & 21 Vict.(1857) c. 85, and amendments; Bish.Marr & D. para. 65, n., 225; 1 Bish. M. Div. & S. para. 1377. Hence a valid marriage could not be dissolved in England except by what has been termed the omnipotent power of parliament.
"This gave rise, in the ecclesiastical courts, to the practice of granting divorces from bed and board, as they used to be called, or judicial separation, as they are called in the statute 20 & 21 Vict. c. 85, para. 7; Bish. Marr. & D. para. 65, n., 225; 1 Bish. M.D. & S. para. 1377. From England *137 this practice was introduced into this country; and though in some of the states it has entirely given way to the divorce a vinculo matrimonii, in others it is still in use, being generally granted for causes which are not sufficient to authorize the latter."
It is well at this point to declare the public policy of this State with reference to marriage and divorce. The State is vitally interested in the continuance of, rather than the dissolution of, a marriage. Divorce is not favored or encouraged but is discouraged.
In Fogel v. McDonald, 159 S.C. 506, 157 S.E. 830, 833, where an action was brought for the purpose of having an alleged marriage declared void, this Court said:
"It is elementary that in proceedings of this character the state is a silent but not by any means an inactive third party. The marriage status being a matter of the deepest public interest and concern, the trial judge has the power, and it is his duty, to see that such a status is not disturbed except under circumstances and for causes fully sanctioned by law. In this class of cases, probably more than all others, the state exercises a jealous and exclusive dominion."
In the case of Brown v. Brown, 215 S.C. 502, 56 S.E. (2d) 330, 333, 15 A.L.R. (2d) 163, a wife sued her husband for divorce. The lower Court denied the divorce and upon an appeal to this Court, Mr. Justice Fishburne, now retired, but who was then a distinguished member of this Court, reviewed the historical background of divorce in this State and declared the public policy of this State relating to marriage in the following language:
"It is generally recognized that the public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation. This policy finds expression in probably every state in this country in legislative enactments designed to prevent the sundering of the marriage ties for slight and trivial causes, or in any case except on *138 a full and satisfactory proof of such facts as the legislature has declared to be cause for divorce. Such provisions find their justification only in this well-recognized interest of the state in the permanency of the marriage relation. 17 Am. Jur., Sec. 12, Page 154. As said in Maynard v. Hill, 125 U.S. 190, 8 S.Ct. 723, 729, 31 L.Ed. 654: `Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress.'"
It is also provided in Section 20-110, and Section 20-110.1 of the 1952 Code of Laws of South Carolina, that in all cases referred to a Master or Special Referee, or tried before the Judge of any Court, that such trial officer must make an earnest effort to bring about a reconciliation between the parties. It is further provided that no judgment of divorce shall be granted in such cases unless it shall be certified in the Master's or Special Referee's Report, or unless the trial Judge shall so state in his decree that an attempt to reconcile the parties was unavailing. It is thus apparent that the underlying philosophy of public policy, as is reflected in the decisions and the statutes above referred to, is to effect a reconciliation and restore the unity of the family relationship.
It is an admitted fact that a reconciliation has taken place between the husband and wife, the original parties to this action, and we hold that such terminates the action and the allowance for temporary alimony falls therewith. Whether the attorney for the complaining wife is entitled to allowance for counsel fees against the husband, where a reconciliation has taken place, has never been decided by this Court, but such question has been determined by many other Courts. The decisions on this question *139 are not uniform. However, in the annotation reported in 45 A.L.R., at page 941, the majority rule is stated as follows:
"There is some conflict of authority as to whether an attorney may continue to prosecute or defend a divorce or separation suit which has been abandoned by the parties. The better rule, and that supported by the majority of the decisions, is to the effect that where the parties to a suit for divorce have abandoned the suit, condoned their offenses, and resumed their marital relations, such action operates to end the litigation, and it cannot be continued by counsel for the complaining spouse; at least where no counter cause of action is set up in a cross complaint or counterclaim.
"The reason for this rule is that to permit an attorney to continue such an action after the parties thereto have become reconciled to each other, have resumed cohabitation, and are living together in a state of amity, would be in violation of public policy. To permit such action would be continuing the litigation after the parties have put an end to it, and would have a tendency to break up the reconciliation, and cause a resumption of the litigation."
In support of the majority rule as is set forth in the foregoing quotation there are cited a number of cases, among them being Bell v. Bell, 214 Ala. 573, 108 So. 375, 45 A.L.R. 935; Reynolds v. Reynolds, 67 Cal. 7 P. 480; Chastain v. Lumpkin, 140 Ga. 18, 78 S.E. 462, 46 L.R.A., N.S., 527; 134 Ga. 219, 67 S.E. 818; Keefer v. Keefer, Kuntz v. Kuntz, 80 N.J. Eq. 429, 83 A. 787.
In the case of Bell v. Bell, supra, it is said [214 Ala. 573, 108 So. 378]:
"We are fully in accord with the view that public policy forbids the reopening of the grounds of divorce after reconciliation for the purpose of allowing attorneys' fees against the husband. There is no inherent right to have attorneys' fees paid by the opposing side in the absence of contract, statute, or recognized ground of equity. The attorney cannot *140 render service for the wife in a divorce suit upon the faith of having the husband pay for it, save on the conditions authorizing the allowance. Among these conditions is the possibility of reconciliation, even the hope thereof, which it is the common duty of all to promote."
In the case of Keefer v. Keefer, supra, the Supreme Court of Georgia said [140 Ga. 18, 78 S.E. 464]:
"We are aware that there is some conflict of authority as to whether a court may refuse to dismiss a divorce case without the payment of attorney's fees to the wife's attorney, or whether an order for such fees may be granted before or in connection with the dismissal. It is unnecessary to discuss the basis of such decisions, or the English practice of taxing attorney's fees as costs. We think the decisions which rule that counsel for the wife cannot prolong such a suit against the wishes of their client are the sounder and more applicable to the statutory procedure in this state for obtaining temporary alimony, including counsel fees, as well as more in accord with public policy. There is no law authorizing attorneys, pending a suit for divorce or permanent alimony, to make application for the allowance of temporary alimony on their own behalf. Such allowance is not a matter of course, but a matter to be determined upon a consideration of the facts. After a wife has condoned the misconduct alleged against the husband, and the two have resumed their former relations, and when they desire to stop the legal controversy between them, it would be against sound public policy to say that they could not do so, but must continue their case involuntarily, and display the family skeleton and parade their forgiven grievances, so as to aid the judge to determine whether, in his discretion, he would have granted alimony, and would still award counsel fees."
In Reynolds v. Reynolds, supra, it was held that if, pending an action for divorce, the parties thereto admit a condonation and ask that the action be dismissed, the Court should order a dismissal and could not thereafter enter judgment *141 against the husband for the counsel fees of the wife. Judge Myrick tersely said [67 Cal. 176, 7 P. 481]:
"When the husband and wife forgave and were forgiven, and abandoned their criminations and recriminations, the attorneys had to but gather up their briefs and retire."
In our own case of Ex Parte Tillman, 84 S.C. 552, 66 S.E. 1049, 1052, 26 L.R.A., N.S., 781, this Court said:
"Any agreement made in contemplation of broken family ties, and providing for the continuation of the breach was annulled by the reconciliation and the renewal of the united family life."
We reach the conclusion that where an estranged husband and wife have settled their marital differences, have become reconciled to each other, that the husband cannot be held for attorney's fees of counsel employed by the wife.
The exceptions are overruled and the judgment of the lower Court affirmed.
STUKES, C.J., and TAYLOR, OXNER and LEGGE, JJ., concur.