## 18310

Annie Margaret C. GODWIN, Apppellant, v. H. L. GODWIN, Respondent

(140 S. E. (2d) 593)

*John M. Mills, Esq.,* of Bennettsville, *for Appellant,*

*Charles G. Vaughan, Esq.,* of Bennettsville, *for Respondent.*

February 25, 1965.

Moss, Justice.

Annie Margaret C. Godwin, the appellant herein, instituted this action against her husband, H. L. Goodwin, for a divorce *a vinculo matrimoni* on the ground of physical cruelty. Section 20-101 (3) of the 1962 Code. The respondent denied that he was guilty of physical cruelty.

This case was tried before the Honorable W. F. Stevenson, Judge of the County Court of Marlboro County. After hearing the testimony, the trial Judge filed his order denying to the appellant a divorce on the ground of physical cruelty. This is an appeal from such order.

The record shows that the parties to this action were married in Columbia, South Carolina, on January 16, 1960. Two children were born of this marriage. There is no issue here as to the custody and support of these children, such having been determined in another action.

Immediately following their marriage, the parties resided in Columbia, South Carolina, for a period of time. Thereafter, they moved to Marlboro County and lived with the parents of the appellant. Thereafter, they lived in the City of Bennettsville for about one and one-half years, and then moved back to the home of the parents of the appellant because of her pregnancy, and this child was born on March 30, 1963. In May, 1963, the respondent moved back to Bennettsville and requested the appellant to go with him but she refused upon the ground that she was not well and the child was too young to be moved. They have lived separate and apart since the respondent moved back to Bennettsville. The two acts relied upon by the appellant as constituting physical cruelty occurred after the aforesaid separation.

It appears that the husband and wife were employed at the Delta Finishing Company in Wallace, South Carolina. In June, 1963, the respondent stopped the appellant in the plant to talk with her. After a very short conversation, the appellant turned to leave and, as she did, according to her testimony, the respondent caught her by the arm and "pinched her arm hard enough to cause a large black and blue bruise". She said that her arm was sore for two or three days and was discolored for several more days. The respondent testified, with reference to this incident, that he was talking to his wife about a reconciliation and as she turned to leave he caught her by the arm and the pinch occurred when he

either failed to catch all of her arm or when her arm slipped from his grasp.

The second incident upon which the appellant relies to show physical cruelty occurred on November 12, 1963. She testified that on this date she left the home of her parents to visit in the home of her uncle and aunt. After she had been there for a few minutes, a car stopped outside and her husband came in without knocking on the door; that he said he wanted to talk to her and for her to come outside, which she refused to do because she said she was scared. She testified that the respondent picked her up bodily and took her out of the house and was, she thought, taking her to the car to take her away as there was someone in the car and the motor was running. She said that she struggled to get loose and was screaming "put me down" or "let me go" and in trying to get loose from her husband she slapped him once. She further testified that when she broke loose from his grasp she sprained her ankle as she fell to the ground, and such later pained her and swelled up. She testified that her husband then slapped her hard enough to show the print on her face which hurt and was very painful. He then took her by the hands and led her back into the house, put her in a chair, and stood over her holding her by her hands while they talked, and after talking for a while he left. She testified that following this incident she returned to the home of her parents and, thereafter, her husband came to the house and would not leave when requested so to do by her. In order to avoid any further trouble she called an officer and he came and ordered the respondent to leave, which he then did. She testified that as a result of this treatment she became highly nervous, which affected her health, and that she is afraid of her husband molesting her again while she is going to and from work or while she is at work. The respondent testified that he went to the home of the uncle and aunt of the appellant to talk with his wife about a reconciliation and that when she refused to talk with him that he picked her up and took her out in the yard. He testified that his wife slapped him in trying to get loose and that he,

in turn, slapped her, hoping the shock would quiet her down. He said he then took her by the hand and returned to the house where he unsuccessfully talked to her about a reconciliation. The husband specifically denied that he intended to take his wife away from the home of her uncle and aunt. The testimony shows the unwillingness of the appellant to effect a reconciliation with her husband, even though he is desirous of such.

The trial judge dismissed the complaint of the appellant, holding that the facts relied upon by her were insufficient to meet the requirements for a divorce on the ground of physical cruelty, as such is defined in the case of *Brown v. Brown,* 215 S. C. 502, 56 S. E. (2d) 330, 15 A. L. R. (2d) 163.

The *Brown case* was one wherein the wife sought absolute divorce from her husband, one of the grounds being that of physical cruelty. We quote the following from such case:

"Physical cruelty, as used in divorce law, has generally been defined by our courts as actual personal violence, or such a course of physical treatment as endangers life, limb or health, and renders cohabitation unsafe. With this definition, we are in accord. In determining what acts constitute cruelty under our statute authorizing a divorce, regard must be had, not only to the provisions of the statute, but also to the circumstances of each particular case.

Continued acts of personal violence producing physical pain or bodily injury and fear of future danger are recognized as sufficient cause for a divorce for cruelty in nearly all jurisdictions, especially where accompanied by other acts of ill treatment. 27 C. J. S., Divorce, § 26, page 549. It is not every slight violence, however, committed by the husband or wife against the other, even in anger, which will authorize the divorce.

"It is generally held that a single act of physical cruelty does not ordinarily constitute ground for divorce, unless it is so severe and atrocious as to endanger life, or unless the

act indicates an intention to do serious bodily harm or causes reasonable apprehension of serious danger in the future. A single act of aggravated cruelty may, however, warrant a divorce if accompanied with such precedent or attendant circumstances as to satisfy the court that such acts are likely to be repeated. 27 C. J. S., Divorce, § 25b, page 548; *Phinizy v. Phinizy,* 154 Ga. 199, 114 S. E. 185; *Smith v. Smith,* 125 W. Va. 489, 24 S. E. (2d) 902; Nye's Appeal, 126 Pa. 341, 17 A. 618, 12 Am. St. Rep. 873; Annotation, 65 Am. St. Rep. 69." See also *Barstow v. Barstow,* 223 S. C. 136, 74 S. E. (2d) 541.

The record shows that the appellant and her husband left their home in Bennettsville and moved in with her parents because of her pregnancy. This child was born on March 30, 1963. The record shows that the respondent, in May of 1963, moved back to his home in Bennettsville and requested his wife to go with him. This request was refused, the wife ascribing her reason therefor that she was not well and the child was only a month old and too young to move. However, in June, 1963, the record reveals that the appellant was gainfully employed at the Delta Finishing Plant in Wallace, South Carolina. Attention is directed to the rule in this State that the husband has the right, acting reasonably, to choose where the family shall reside and it is the duty of the wife to reside with him and, if she refuses, she is guilty of desertion. *Oswald v. Oswald,* 230 S. C. 299, 95 S. E. (2d) 493. There is nothing in the record before us to show that the respondent, prior to June, 1963, had in any manner mistreated the appellant or engaged in any conduct that would justify her in refusing to live with him when he had provided a home for her in Bennettsville.

When the respondent was talking to the appellant at her place of employment he was making an effort to effect a reconciliation and to re-establish their marriage relationship. The appellant concluded that they had talked enough and, as she turned to leave, it was then that the respondent placed

his hand upon her arm to keep her from leaving and to continue the conversation about a reconciliation. It was the indifferent and unresponsive attitude of the appellant that brought about this situation. The appellant maintained this same attitude towards the respondent when he visited her at the home of her uncle and aunt.

The general rule is that a divorce will not be granted on the ground of physical cruelty when the acts of cruelty complained of were provoked by the misconduct of the complaining spouse. However, that there was some provocation will not disentitle a spouse to relief if the retaliatory cruelty complained of was out of proportion to the provoking conduct. *Miller v. Miller,* 225 S. C. 274, 82 S. E. (2d) 119; *Brown v. Brown,* 239 S. C. 444, 123 S. E. (2d) 772. The underlying philosophy of public policy is to effect a reconciliation between an estranged husband and wife and restore unity of family relationship. In *Re DePass,* 231 S. C. 134, 97 S. E. (2d) 505. In this connection we call attention to Section 20-110 of the 1962 Code, which requires a trial officer to make an earnest effort to bring about a reconciliation between estranged spouses. We think the refusal of the appellant to discuss a reconciliation with her husband provoked and brought about the acts of the husband of which she now complains.

In the case of *Darrow v. Darrow,* 122 Ark. 346, 183 S. W. 746, it was held that where a husband caught hold of his wife's arm and bruised it, this one act of ill treatment was not sufficient to warrant the granting of a decree of divorce. In *Cooper v. Cooper,* 10 La. 249, the Court declared the wife had failed to make out a case for relief, where the only personal violence shown consisted in the husband's pushing the wife out of doors on one occasion, at which time he was provoked by her.

In the *Brown case,* above cited, the wife testified that her husband slapped her twice and pinched her and as a result

of such she suffered some pain. The Court held that this evidence was not sufficient to warrant any reasonable conclusion that such acts constituted physical cruelty.

The alleged acts of physical cruelty upon which the appellant here relies were not of a violent or serious nature, nor is it shown by the evidence that the acts of the respondent indicated an intention to do serious bodily harm to the appellant or to cause her reasonable apprehension of serious danger in the future. We cannot adopt a policy of awarding a divorce for slight or trivial causes. The testimony of the appellant does not show physical cruelty within the contemplation of our divorce statute.

We conclude that the trial Judge was correct in refusing a divorce to the appellant on the ground of physical cruelty.

Affirmed.

TAYLOR, C. J., LEWIS, BUSSEY and BRAILSFORD, JJ., concur.