16283

BROWN v. BROWN
(56 S. E. (2d) 330)

*Mr. John M. Schofield,* of Walhalla, *for Appellant,*

The Respondent was not represented.

November 16, 1949.

FISHBURNE, Justice.

This is an appeal from a decree of the Court of Common Pleas of Oconee County, denying the appellant, Ruth R. Brown, an absolute divorce from the bonds of matrimony. The suit was based upon the statutory grounds of physical cruelty and adultery charged against her husband, the respondent Samuel E. Brown.

The husband filed an answer signed only by himself, in which he generally denied the allegations of the complaint, waived any and all rights under the Soldiers' and Sailors' Civil Relief Act, as amended, 50 U. S. C. A. Appendix, § 501 *et seq.*, and further waived notice of any hearing to be had in the action. The answer was not verified.

The cause was heard by the trial judge without a reference, and the only testimony offered upon the trial of the case was that of the plaintiff, Mrs. Brown.

The parties were married in August, 1942, at Elkton, Maryland, and later Mrs. Brown returned to her native County of Oconee. There is a dearth of testimony in the meager record of this case as to where the couple might have resided after their marriage, but she testified that the last time they lived together was in Oconee County in July, 1948, after which they lived separate and apart. He is now in the armed services of the United States, but it does not appear where he is stationed. In support of the allegations of her

complaint as to physical cruelty, appellant testified that husband slapped her twice and pinched her. And to susta. the charge of adultery, she said that her husband had made love to her sister-in-law in her presence, and that on one occasion she found him in bed with her. This is the sole testimony offered by the plaintiff, without elaboration and without any circumstantial detail. She is entirely vague as to when the alleged physical cruelty took place. It may be inferred that the alleged act of adultery occurred shortly before she and her husband parted in 1948. They have one child, who lives with the appellant in Oconee County.

After the trial court had heard the evidence, it entered a decree dismissing the complaint, and holding that the evidence fell far short of being sufficient to support the charges of physical cruelty and adultery. From this decree the wife has appealed, claiming that the evidence is amply sufficient to establish both charges.

In view of the fact that this case brings to the forefront a cause of action not cognizable by the courts of this State for the past seventy years or more, it will not be inappropriate to briefly refer to the historical background of divorce laws in South Carolina.

The English law concerning divorce and causes of divorce as it existed prior to the American Revolution, was the Ecclesiastical Law, and not the common law. It was administered by judges and courts, whose jurisdiction never existed in this country; and it has never been recognized as a part of our common law. For a short time, during the Protectorate of Cromwell, when the spiritual courts were closed and the civil law was silenced, the Court of Chancery took cognizance of cases for alimony. 17 Am. Jur., Sec. 6, Page 149.

As is pointed out in *Mattison v. Mattison,* 1 Strob. Eq. 387, 20 S. C. Eq. 387, 47 Am. Dec. 541, decided in 1846, a Court of Chancery was first established in South Carolina

in 1721, and it was there declared: "Nearly a quarter of a century ago the Supreme Court of this State, in *Rhame v. Rhame,* advert to the practice of the English Court of Chancery, as well as to that of South Carolina, in relation to matrimonial causes, and it is there declared that the case of alimony has always been regarded as an exception, and that 'the jurisdiction of the Court must be limited to the allowing of alimony  *  *  *.'  If, twenty years since, it was judicially announced that the Court of Equity has no cognizance of matrimonial causes beyond the allowance of alimony, and a necessity existed for more extensive authority, legislative interference would have supplied the defect, and, following the example of other States, would have vested the judicial tribunals of the State with this new and perilous power  *  *  *.  Whether wisely or unwisely, the Legislature has thought proper to withhold these powers. They have delegated to no Court the authority to declare a marriage null and void, and they have never themselves exercised the authority. Cases of individual hardship have occurred, and will occur; but the observation of a different policy in other States, as well as the experience of our own, has served only to confirm the conviction that it is better to tolerate occasional suffering than to jeopardize the peace of society, and open a wide door to fraud, imposition and other immorality."

It was not until the adoption of the Constitution of 1868, during the Era of Reconstruction, that any change was brought about in connection with divorce in this State. That Constitution, Art. IV, Sec. 15, declares: "The courts of common pleas shall have exclusive jurisdiction in all cases of divorce"; and provided in Art. XIV, Sec. 5, that "divorces  *  *  *  shall not be allowed but by the judgment of a court, as shall be prescribed by law."

When the General Assembly met in 1872, an Act was passed, 15 Stat. 30, authorizing a divorce from the bonds of matrimony on the grounds of adultery and willful desertion. That Act continued of force and effect for six years,

when it was repealed by the Act of 1878, 15 Stat. 719. All provisions of the Constitution of Eighteen Hundred and Sixty Eight, and the amendments thereto, were repealed when our present Constitution was adopted in 1895, Art. XVII, Sec. 11, subd. 9. Until amended in 1949, the Constitution of 1895 provided, in Art. XVII, Sec. 3, "Divorces from the bonds of matrimony shall not be allowed in this State."

In 1949, an amendment to Art. XVII, Sec. 3 of the Constitution of 1895 was ratified by the General Assembly, having been voted on favorably by a majority of the electors. Section 3, in accordance with this amendment, now reads as follows: "Divorces from the bonds of matrimony shall be allowed on grounds of adultery, desertion, physicial cruelty, or habitual drunkenness." Acts 1949, Page 138, 46 Stat. at Large.

Following the adoption of the foregoing Constitutional Amendment, the General Assembly at its 1949 session, passed an Act to provide for and regulate the granting of divorces from the bonds of matrimony in this State, Act April 15, 1949, 46 St. at Large, Page 216, on the grounds stated in the Amendment. So that the designated Courts of the State are now vested with what was termed in 1846, in *Mattison v. Mattison, supra,* "This new and perilous power."

A careful examination of our reports fails to disclose any case specially passing upon any ground of divorce during the period in which we had a divorce law, from 1872 until 1878. The cases of *Mattison v. Mattison,* 1 Strob. Eq. 387, 47 Am. Dec. 541, *supra,* and *Grant v. Grant,* 12 S. C. 29, 32 Am. Rep. 506, deal mainly with questions of jurisdiction and not with the general principles governing divorce.

It is generally recognized that the public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation. This

policy finds expression in probably every state in this country in legislative enactments designed to prevent the sundering of the marriage ties for slight and trivial causes, or in any case except on a full and satisfactory proof of such facts as the legislature has declared to be cause for divorce. Such provisions find their justification only in this well-recognized interest of the state in the permanency of the marriage relation. 17 Am. Jur., Sec. 12, Page 154. As said in *Maynard v. Hill,* 125 U. S. 190, 8 S. Ct. 723, 729, 31 L. Ed. 654: "Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress."

Coming now to the record before us, we sustain the circuit court in the holding that the evidence offered in this case is not sufficient to support the charge of physical cruelty. There is a great diversity in the language of the statutes in the various States with reference to cruelty. In many of these statutes the offense is described as "extreme cruelty," "extreme and repeated cruelty," "cruel and abusive treatment," or language having a similar import. And usually these expressions include physical and mental cruelty. Under our statute we are confined to physical cruelty.

Physical cruelty, as used in divorce law, has generally been defined by our courts as actual personal violence, or such a course of physical treatment as endangers life, limb or health, and renders cohabitation unsafe. With this definition, we are in accord. In determining what acts constitute cruelty under our statute authorizing a divorce, regard must be had, not only to the provisions of the statute, but also to the circumstances of each particular case.

Continued acts of personal violence producing physical pain or bodily injury and a fear of future danger are recognized as sufficient cause for a divorce for cruelty in nearly all jurisdictions, especially where accompanied by other acts of ill treatment. 27 C. J. S., Divorce, § 26, page 549. It is not every slight violence, however, committed by the husband or wife against the other, even in anger, which will authorize the divorce.

It is generally held that a single act of physical cruelty does not ordinarily constitute ground for divorce, unless it is so severe and atrocious as to endanger life, or unless the act indicates an intention to do serious bodily harm or causes reasonable apprehension of serious danger in the future. A single act of aggravated cruelty may, however, warrant a divorce if accompanied with such precedent or attendant circumstances as to satisfy the court that such acts are likely to be repeated. 27 C. J. S., Divorce, § 25b, page 548; *Phinizy v. Phinizy,* 154 Ga. 199, 114 S. E. 185; *Smith v. Smith,* 125 W. Va. 489, 24 S. E. (2d) 902; Nye's Appeal, 126 Pa. 341, 17 A. 618, 12 Am. St. Rep. 873; Annotation, 65 Am. St. Rep. 69.

However, as courts are loath to grant a divorce for a single act of physical violence by one of the married parties to the other as constituting such cruelty as will justify a decree for divorce, the facts and circumstances accompanying its infliction should be fully laid before the court; a full history of the assault should be given.

The burden was upon the plaintiff to make good the allegation of physical cruelty by the preponderance of the evidence, by detailing what went before and what followed the physical violence of which she complained.

The appellant was asked: "State whether or not at any time during your married life while you were living together your husband hit you or did anything else of that nature."

She replied, "He slapped me twice and he has pinched me." And she stated that as a result of the pinch she suffered some pain.

Here we have neither time, place, nor circumstances which would aid us in evaluating the character of this alleged physical cruelty. It may be inferred that the alleged slapping and pinching occurred at one and the same time. But whether this occurred six years ago, shortly after their marriage, or later does not appear. In our opinion, this evidence is not sufficient, under the legal principles above stated, to warrant any reasonable conclusion that the alleged act or acts of the respondent constituted physical cruelty. Annotation, 24 A. L. R., Page 918.

We next come to the question of whether or not the trial court erred in holding that there was not sufficient evidence to warrant the granting of a divorce on the ground of adultery.

It is a primary principle of the law of divorce that direct proof of adultery by evidence of eyewitnesses is not required. This rule of evidence is well stated in 2 Greenl. Ev., Secs. 40, 41, 43, where it is said: "The nature of the evidence which is considered sufficient to establish the charge (adultery) before any tribunal has been clearly expounded by Lord Stowell, and is best stated in his own language. 'It is a fundamental rule,' he observes, 'that it is not necessary to prove the direct fact of adultery; because, if it were otherwise, there is not one case in a hundred in which that proof would be obtainable. It is very rarely, indeed, that the parties are surprised in the direct act of adultery. In every case, almost, the fact is inferred from circumstances that lead to it by a fair inference as a necessary conclusion; and unless this were the case, and unless this were so held, no protection whatever could be given to marital rights * * *. The only general rule that can be laid down upon the subject is that the circumstances must be such as would lead the guarded discretion of a reasonable

and just man to the conclusion; for it is not to lead a rash and intemperate judgment, moving upon appearances that are equally capable of two interpretations; neither is it to be a matter of artificial reasoning, judging upon such things differently from what would strike the careful and cautious consideration of a discreet man.' * * * Upon such subjects the rational and the legal interpretation must be the same."

Of like import is the text of Nelson on Divorce and Annulment, Vol. 1, (2d Ed.); Sec. 5, 10, Page 183: "A charge of adultery is one of a criminal offense and especially and uniquely damaging to the reputation of the party charged. The general and widely recognized presumption of innocence must be indulged against it, and, while it is not required to be proved beyond a reasonable doubt, as in a criminal proceeding, the evidence must be at least clear and positive and convincing. Raising a considerable or even strong suspicion of guilt is not enough. The test most frequently reiterated (though by no means a satisfactory yardstick) is that the proof must be such as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt." See also *Haskins v. Haskins,* 188 Va. 525, 50 S. E. (2d) 437; 17 Am. Jur., Sec. 397, Page 344.

On the question of alleged adultery in this case, the difficulty presented is in the proper appraisal of the facts and circumstances proved. On this issue, the testimony of the wife completely lacks corroboration. We have the bare statement that at some time, shortly before they parted, appellant found her husband in bed with her sister-in-law. None of the circumstances are given.

"The rule for the sufficiency of the proven facts to infer adultery is that, if they are not reasonably reconcilable with the assumption of innocence yet are so with that of guilt, the conclusion of guilt will be authorized. But it will not be if either they can be reasonably reconciled with innocence, or cannot with guilt. Circumstances merely suspicious are in-

adequate, though there are degrees of imprudence from which the offense will be presumed. Still care and circumspection should attend all dealings with this class of evidence." 2 Bishop on Marriage, Divorce and Separation, Sections 1356 and 1360.

The general rule is that in the absence of a statutory provision governing the question, a divorce will not be granted on the uncorroborated testimony of a party or the parties to the suit. This is the view maintained by the decided weight of authority. See the many cases cited in Annotation, Ann. Cas. 1913-B, page 3. The rule applies whether the charge is adultery or the various other statutory grounds for divorce. Since the main reason for the rule is to prevent collusion between the parties, the rule is not generally deemed inflexible; and may be relaxed when it is evident that collusion does not exist. 27 C. J. S., Divorce, § 136a, page 730.

As to the sufficiency of corroboration, it is well stated in 27 C. J. S., Divorce, § 136b, page 732:

"There is no definite rule as to the degree of corroboration required, but each case must be decided according to its own facts and circumstances. The corroborating evidence must go to all the material allegations of the complaint necessary to sustain a decree of divorce but it need not in itself be sufficient to warrant that relief. Thus it is settled that complainant's testimony is not required to be corroborated in every particular, but that it is enough if corroborated by the testimony of third persons as to some of the causes alleged, or it may be sufficiently corroborated by testimony of other witnesses to acts other than those specifically alleged which tend to prove those that are, especially where none of the charges are denied. So it may be sufficiently corroborated by circumstantial evidence. * * *"

"The proof of adultery as a ground for divorce must be clear and positive, and the infidelity must be established by a clear preponderance of the evidence. The proof must be

sufficiently definite to identify the time and place of the offense, and the circumstances under which it was committed. It is not necessary that the fact of adultery be proved by direct evidence, but, as stated *infra* § 139b, it may be sufficiently proved by indirect or circumstantial evidence, or it may be proved by evidence consisting in part of both. However, if after due consideration of all the evidence the proof of guilt is inconclusive, a divorce will be denied   *   *   *." 27 C. J. S., Divorce, § 139a.

The rule of the criminal law that where circumstantial evidence is relied upon, the facts proved must be such as to preclude every other reasonable hypothesis, but the guilt of the accused, does not apply in civil cases. In civil actions, every other reasonable conclusion need not be excluded; proof of circumstances warranting a given inference is sufficient in such cases. *Leek v. New South Express Lines,* 192 S. C. 527, 7 S. E. (2d) 459; Annotation, 97 Am. St. Rep., page 802.

Assuming, without deciding, that adultery may be established by the bare fact that the parties on one occasion occupied the same bed, it is clearly evident in this case that the testimony by appellant on this issue, is totally lacking in corroboration by any other witness or by any additional corroborating circumstances. In our opinion, the rule as to corroboration, while not inflexible, should be applied in this case. A careful review of the record convinces us that this is a case which clearly evidences necessity for corroborating facts and circumstances, and that the trial judge committed no error in denying a divorce on either of the grounds hereinabove discussed.

Judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.