16716

BARSTOW v. BARSTOW
(74 S. E. (2d) 541)

*Messrs. Walter J. Bristow, Jr.,* of Columbia, and *Edward W. Bridgham,* of Bath, Maine, *for Appellant,*

*Messrs. John I. Rice* and *Winter & Winter,* of Columbia, *for Respondent,*

*Messrs. Walter J. Bristow, Jr.,* of Columbia, and *Edward W. Bridgham,* of Bath, Maine, *for Appellant,*

Feb. 10, 1953.

OXNER, Justice.

This action was brought on September 12, 1951, by the husband for a divorce on the grounds of physical cruelty

and desertion. The only allegations in the complaint in support of these grounds are "that on occasion the defendant has struck this plaintiff with a spiked shoe, and on account of such physical and mental cruelty, plaintiff finds living with defendant impossible and unbearable"; and that the defendant "has constantly nagged and abused this plaintiff, so much so that plaintiff has been forced to leave and live separate and apart from defendant."

The foregoing charges were denied by the wife, who also pleaded condonation. Thereafter she was allowed to amend her answer by adding as a further defense a plea of recrimination.

It was agreed between counsel that the testimony of the wife and the nonresident witnesses could be presented by affidavits rather than by depositions. The case was heard by the County Judge on these affidavits and the testimony of the husband. Thereafter on December 3, 1951, a decree was filed granting the husband a divorce *a vinculo matrimonii* upon the grounds alleged in the complaint. The wife has appealed.

The parties, whose ages are not disclosed, were married in the State of Maine on June 20, 1936. They have two children, a son and daughter, aged thirteen and eleven, respectively. The wife, with the children, continues to reside in Maine. The husband has been in the army for a number of years and has attained the rank of sergeant. He claims that shortly after returning from overseas in 1946, the cruel conduct of his wife compelled him to leave the home and there has since been no cohabitation between the parties. He admits going to Maine in March, 1951 but stated that the purpose of this trip was to see about his children at a time when his wife was in the hospital, and that he only remained in Maine for two days. He claims that for a period of more than twelve months he has been a resident of South Carolina.

In support of the charges made in the complaint, the husband testified on direct examination, as follows:

"Q. You have brought this action for a divorce on the ground of physical cruelty and constructive desertion, state to the Court whether your wife, the defendant, has been physically cruel to you and under what circumstances? A. Well, sir, I stood nagging as long as I could stand it and I don't want to hit a woman and I have never made it my policy to hit any woman and I bore her going on.

"Q. Did she strike you? A. She struck me one time on the hand.

"Q. Did she strike and touch you? A. Yes, sir.

"Q. Did she use an instrument? A. The heel of her shoe in many instances.

"Q. Did she leave a scar? A. Here is a scar on my hand today.

"Q. As a result of her striking you? A. Yes, sir."

On cross-examination, he testified:

"Q. I believe when Judge Rice first started questioning you, he asked you about the physical cruelty of your wife and you said she struck you on the hand one time. Is that the only time she struck you? A. One time and several times I have been struck by her.

"Q. Is the only thing she ever struck you with the heel of her shoe? A. The heel of her shoe, yes. That is all.

"Q. How much do you weigh? A. 160 pounds. Before I went there I weighed 170 or 175.

"Q. How much does your wife weigh? A. That I cannot say, I don't know.

"Q. Is she big or little? A. About medium tall.

"Q. Is she shorter than you or taller than you? A. She is taller than I am.

"Q. I haven't talked with Mrs. Barstow, what was the occasion of the striking? People just don't come up and strike another. She didn't just strike you for no reason at all? A. I will tell you, I got accused of a good many things which I had never done and if a man is going to get accused of them he might as well have the name, and I would clear out of the house and let her rave.

"Q. You didn't strike her first? A. No, sir.

"Q. You didn't move to hit her first? A. No, sir. I wouldn't hit no woman. I don't think it is much of a man that would hit a woman. I could have overpowered her.

"Q. You testified she hit you once on the hand? A. Yes, sir.

"Q. What other time did she hit you? A. I would try to sleep, and nothing doing, I would not be able to sleep.

"Q. Why? A. Because she would be pounding me here and there.

"Q. With her hand? A. With anything she could get hold of.

"Q. What occasions were these? You said there was one on the hand, and several others. I want to find out exactly where these were? A. I don't know. I can't remember exactly the date or the time.

"Q. Can you narrow it down to a month? A. That would be pretty hard for me to do. That was back beyond 1944.

"Q. It was beyond 1944 that all of these things occurred, back beyond 1944? A. Before 1944 and after 1944. As I stated, after I came back from overseas too.

"Q. When was that? A. I got back from overseas May 15, 1946.

\* \* \*

"Q. Sergeant, as a matter of fact, you left your wife, she didn't leave you? A. That is right.

"Q. And you say you left her because she nagged you? A. Nagged and physical cruelty.

"Q. How did she nag you? What was she trying to get you to do? A. Oh, this and that."

The husband also offered affidavits by two women who, after saying that they had known the parties for a number of years and had visited in their home, stated that they knew of their own knowledge that the wife "did on a number of occasions strike, bruise and otherwise inflict physical punishment upon her husband" and did "continuously nag and abuse" him.

The testimony of the wife was presented in the form of an affidavit. She denied the charges made by her husband and stated that she had always been kind and considerate. She said that for a period of about six years her husband had been going with other women, by one of whom he had a child, and that she had reproved him for this unfaithfulness. She claimed that her husband had sought to induce her to get a divorce for the purpose of marrying one of these women. She denied that they had been separated since 1946 and claimed that during this period he came home from time to time on furlough when they lived together as man and wife. She said that her husband visited her for two months during the early part of 1951 and on this visit they had sexual relations.

Attached to the wife's affidavit were a number of letters tending to show that she and her husband had never separated and that he wanted a divorce for the purpose of marrying someone else. She also offered a number of affidavits by friends and neighbors to the effect that when the husband visited Maine during the early part of 1951, he stayed with his wife.

Before entering into a discussion of the questions raised by the exceptions, it should be stated that the respondent made no claim to custody of the children and conceded his liability for their support. Accordingly, the Court below placed them in the custody of appellant and required respondent to pay her $100.00 a month for their support and maintenance. This appeal relates solely to the question of whether the Court below erred in granting respondent a divorce *a vinculo matrimonii*.

The only form of cruelty recognized in South Carolina as a ground for divorce is "physical cruelty". There is no well defined rule which may be followed as a test in determining the question as to whether or not certain acts constitute physical cruelty, as each case must be determined according to its own particular circumstances.

The term has been defined generally "as actual personal violence, or such a course of physical treatment as endangers life, limb or health, and renders cohabitation unsafe." *Brown v. Brown,* 215 S. C. 502, 56 S. E. (2d) 330, 333, 15 A. L. R. (2d) 163. It was further stated in the *Brown case*: "Continued acts of personal violence producing physical pain or bodily injury and a fear of future danger are recognized as sufficient cause for a divorce for cruelty in nearly all jurisdictions, especially where accompanied by other acts of ill treatment. * * * It is not every slight violence, however, committed by the husband or wife against the other, even in anger, which will authorize the divorce."

"The courts seem to be particularly skeptical of the existence of fear or danger where a husky husband, in good health, is complaining of physical cruelty on the part of his relatively frail consort." Nelson on Divorce and Annulment, 2nd Edition, Volume 1, § 6.18. While severe or dangerous physical assaults by the wife on her husband may constitute physical cruelty and be a ground for divorce, slight acts of violence by a wife from which the husband can easily protect himself do not constitute physical cruelty entitling him to a divorce. *Teal v. Teal,* 324 Ill. 207, 155 N. E. 28; 27 C. J. S., Divorce, § 26.

When the evidence offered by the husband in the instant case is considered in the light of the foregoing principles, we think it falls far short of showing physical cruelty. The "nagging" complained of by the husband does not constitute physical cruelty. He says that his wife hit him on the hand with the heel of her shoe leaving a scar, but the time and circumstances surrounding this incident are not disclosed. It is not entirely clear whether this alleged assault was repeated. He claims that at times he could not sleep "because she would be pounding me here and there", but no details are stated. There is no evidence of an assault upon the husband with a dangerous instrumentality. So far as the record discloses, he is strong and in good health and has sustained no substantial injury. The wife has done noth-

ing to reasonably cause apprehension of future bodily harm. The two affidavits offered by respondent are entirely too indefinite, vague and general to be of any probative value.

This Court cannot adopt a policy of awarding a divorce for slight or trivial causes. Appellant's own testimony does not show physical cruelty within the contemplation of our divorce statute.

The foregoing conclusion is fully supported by our own case of *Brown v. Brown, supra,* as well as the authorities from other jurisdictions. *Jackson v. Jackson,* 70 R. I. 333, 38 A. (2d) 637; *Prince v. Prince,* 286 Mich. 518, 282 N. W. 228; *Levy v. Levy,* 320 Ill. App. 608, 51 N. E. (2d) 829.

There is no basis for a divorce on the ground of desertion. The husband voluntarily left his wife. It is clear that her conduct was not such as to compel him to leave the home. The facts do not show constructive desertion. *Machado v. Machado,* 220 S. C. 90, 66 S. E. (2d) 629.

In view of the foregoing conclusion, we find it unnecessary to discuss or pass upon the other questions raised by appellant's exceptions, including the affirmative defenses set up by her.

Judgment granting respondent a divorce *a vinculo matrimonii* is reversed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.