THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Linda Lee Henderson Powell, Respondent,
v.
James Kevin Powell, Appellant.
 
 
 

Appeal From McCormick County
 C. David Sawyer, Jr., Family Court Judge

Unpublished Opinion No. 2005-UP-595
Heard September 13, 2005  Filed November 21, 2005

AFFIRMED IN PART, MODIFIED IN PART,
VACATED IN PART, REVERSED IN PART,
AND REMANDED IN PART 

 
 
 
Thomas M. Neal, III, of Columbia, for Appellant.
Timothy E. Madden, of Greenville, for Respondent.
 
 
 

PER CURIAM:  In this consolidated appeal, Kevin Powell (Husband) appeals the family court order awarding Linda Powell (Wife):  a divorce based on Husbands adultery; $4,000 per month in alimony; health insurance maintained by Husband; a life insurance policy maintained by Husband as security for alimony; sixty-eight percent of the marital estate, net of liabilities; and attorneys fees and costs.  Husband also appeals the family courts decision in a separate action to deny his request to modify his alimony obligation.  Finally, Husband appeals the courts order finding him in contempt for failing to pay alimony.  We affirm in part, modify in part, reverse in part, vacate in part, and remand. 
FACTS
Husband and Wife were married in 1989.  At the time of the marriage, Husband had a college degree and was employed by American Express as a financial advisor.  Wife had a high school diploma and owned a court reporting business.  During the marriage, Wife was diagnosed with breast cancer and underwent reconstructive surgery.  Wifes reconstructive surgery led to complications necessitating several back surgeries.  Wife filed a claim under her long-term disability insurance and closed her court reporting business.   
Between 1996 and 1999, Husband and Wife separated several times due to marital difficulties.  Husband and Wife separated for the last time in December of 1999.  Just after the couples separation, Husband met another woman and began a romantic relationship with her.  On October 17, 2000, Wife filed for divorce on the grounds of Husbands adultery and requested separate maintenance and support, equitable division of the marital property, an award of health insurance coverage, an order requiring Husband to secure a life insurance policy on his life naming Wife as the sole beneficiary, attorneys fees and costs, and a restraining order preventing Husband from harassing Wife and restraining him from transferring or disposing of marital property.  Husband answered Wifes complaint and asserted Wifes alleged adultery as a counterclaim.   
After a temporary hearing, the family court issued a pendente lite order:  (1) allowing Wife to remain in the marital home and giving exclusive use of the couples condominium to Husband; (2) giving Husband and Wife use of the vehicles driven by each; (3) ordering Husband to pay Wife $1,000 per month in temporary alimony, maintain Wifes health insurance, and pay the mortgage on the marital residence in addition to all taxes and maintenance expenses; and (4) ordering Husband to transfer 400 shares of American Express stock to Wife in order for her to pay legal fees and living expenses.  The court also ordered Wife to pay any remaining expenses associated with the marital home.  
The family court conducted a trial over a period of three days in September and October of 2001.  In February 2002, the family court issued a final divorce decree granting Wife a divorce based on Husbands adultery.  In its order, the family court awarded Wife $4,000 per month in alimony and apportioned the marital property, net of marital debts, sixty-eight percent to Wife and thirty-two percent to Husband.  Included in these assets, the family court awarded Wife the marital residence, the homes furnishings, and her car.  In addition, the family court ordered Husband to maintain Wifes medical insurance, maintain a life insurance policy naming Wife as an irrevocable beneficiary to secure his alimony obligation, pay $30,000 of Wifes attorneys fees, and pay $9,000 for Wifes expert witness.    
Husband filed a Rule 59(e), SCRCP motion to alter or amend the family courts order, which the family court denied.  Husband appealed both the divorce decree and the order denying his Rule 59(e) motion.  During the pendency of Husbands appeal, Husband filed an action with the family court seeking to modify his alimony obligation based on a change in circumstances.  Wife filed a motion to dismiss Husbands petition due to the pending appeal.  The family court continued Husbands action pending the outcome of his appeal.  In the meantime, Wife filed a petition for a rule to show cause, requesting Husband be held in contempt of court for failing to pay her alimony as specified in the divorce decree.  Husband then filed a motion seeking to stay Wifes action pending the outcome of Husbands petition for modification of the alimony award.  The family court held Husband in contempt of court.  This court, however, issued an order staying the contempt proceeding and remanding the issue of modification back to the family court.  The family court issued an order denying Husbands request for modification of his alimony obligation.  In this consolidated appeal, Husband appeals the divorce decree, the order denying his Rule 59(e) motion, and the order denying his request to modify his alimony obligation and finding him in contempt.   
STANDARD OF REVIEW
When reviewing the factual finding of the family court, this court may take its own view of the preponderance of the evidence. 
Durlach v. Durlach, 359 S.C. 64, 70, 596 S.E.2d 908, 912 (2004).  However, because the family court is in a superior position to judge the witnesses demeanor and veracity, its findings should be given broad discretion. 
Scott v. Scott, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003).   
LAW/ANALYSIS
I.  Grounds for Divorce 
Husband argues the family court erred in granting Wifes request for a divorce on the basis of Husbands adultery.  Although Husband admits he began a romantic relationship with another woman shortly after he separated from Wife, he asserts Wife also committed adultery during the marriage.  Husband argues Wifes admission during her deposition and at trial that she committed adultery is sufficient evidence to assert the defense of recrimination.  We agree. 
As a general rule, to constitute the defense of recrimination, the misconduct of which the plaintiff is guilty must be such as to provide the defendant with grounds for divorce. 
Allen v. Allen, 287 S.C. 501, 504, 339 S.E.2d 872, 874 (Ct. App. 1986).   

To obtain a divorce on the ground of adultery, the evidence establishing the adultery must be clear and positive, and the infidelity must be established by a clear preponderance of the evidence.  The proof must be sufficiently definite to identify the time and place of the offense, and the circumstances under which it was committed.  

Nemeth v. Nemeth, 325 S.C. 480, 484, 481 S.E.2d 181, 183 (Ct. App. 1997) (quoting Brown v. Brown, 215 S.C. 502, 512-13, 56 S.E.2d 330, 335 (1949)).
In response to Wifes allegations of adultery in her complaint, Husband counterclaimed that Wife committed adultery with Ray Wright.  Later, Wife admitted in her deposition that she had an affair with Wright during the marriage.  At the final hearing, Wife testified in more detail regarding the relationship.  She stated that during one period of separation, both she and Husband were confronted by Ray Wrights wife regarding an affair.  Wife testified that at that point, no affair had occurred and she informed Mrs. Wright of that fact.  Prior to moving back into the marital home, Husband informed Wife that Mrs. Wright had been calling him at work and told Wife to take care of it.  Wife stated that her affair with Wright occurred later.  She testified that Husband never asked her about the affair with Wright, but that he knew it had occurred and would bring it up during arguments:  

[Wife]: He would just make a statement, well you had an affair with Ray Wright.  Hes never asked me.  He knew I did.  He just said take care of it.  He never asked me.
[Husbands attorney]:  Your husband never asked you? 
[Wife]:  Never asked me. 
[Husbands attorney]:  And you never told him?
[Wife]:  He never asked me.  He said take care of it, and I took care of it. 

Husband alleged in his affidavit for the temporary hearing and in his deposition that Wife had an affair.  However, he testified at the final hearing that although he suspected an affair had occurred between Wife and Wright, Wife denied it and he had no proof.  He admitted to revisiting the subject whenever the couple would have arguments, but he stated that Wife continued to deny the affair.  Husband testified that he did not know for sure that Wife had an affair until she admitted it in her deposition testimony.  According to Husband, if he had known about the affair during the marriage, he would have left Wife and filed for divorce immediately.   
The family court found that although Wife proved her allegation of Husbands adultery, Husband did not provide corroborative evidence of Wifes adultery.  The court further found that Husband forgave and condoned Wifes adultery when he returned to the marriage.  Based on these facts, the court found Wife was entitled to a divorce based upon the fault grounds of adultery; Husband condoned Wifes admitted adultery; and the defense of recrimination was not available to Husband because he failed to corroborate Wifes adultery.    
Initially, we address the courts finding that Husband failed to corroborate Wifes adultery.  Although corroborative evidence is generally required in order to prove a ground for divorce, this rule may sometimes be relaxed.  See 
Brown v. Brown, 215 S.C. 502, 512, 56 S.E.2d 330, 335 (1949) (holding that corroborative evidence, in addition to a partys or the parties testimony, is necessary to grant a divorce);
Harvley v. Harvley, 279 S.C. 572, 574, 310 S.E.2d 161, 162 (Ct. App. 1983) (noting that [t]he main reason for the rule requiring corroboration is to prevent collusion.  Where it is evident that collusion does not exist, this rule may be relaxed.).  In fact, we have upheld a family courts decision to grant a divorce based on adultery when a husband admitted his adultery on several occasions, finding:  There is no need to corroborate the uncontradicted admission of appellant against his own interests. 
Harvley, 279 S.C. at 574, 310 S.E.2d at 162.  In the present case, Wifes admission of the affair was clear evidence of her adulterous relationship with Wright.  Because we find the case at bar to be highly contested and because Wife admitted her adultery on more than one occasion, we find corroborating evidence of her adultery unnecessary.  
We now turn to whether Husband condoned Wifes adultery such that it was no longer a ground for a divorce.  In
Wilson v. Wilson, 274 S.C. 236, 262 S.E.2d 732 (1980), the supreme court stated: 

Condonation has been defined as forgiveness, either express or implied, of an antecedent matrimonial offense by one spouse for a breach of marital duty by the other on condition that it shall not be repeated, and that the offender shall thereafter treat the forgiving party with conjugal kindness.  It is primarily a state of mind, the existence of which may appear either from the language used, from conduct, or both.

Wilson, 274 S.C. at 238, 262 S.E.2d at 733.  To establish the defense of condonation, the offending spouse must prove the spouse offended against (1) had knowledge of the offense or misconduct allegedly condoned, and (2) voluntarily forgave it or voluntarily engaged in the conduct which is asserted to amount to implied forgiveness. 
McLaughlin v. McLaughlin, 244 S.C. 265, 274, 136 S.E.2d 537, 541 (1964) (citations omitted).  The forgiveness may be either express or implied.  A full resumption or continuance of marital cohabitation after the conduct complained of and with knowledge thereof, for any considerable period of time, quite conclusively shows an intention to forgive or condone such conduct.  Id.  (emphasis added).  
Although Wife contends Husband condoned her adultery, we find her own testimony indicates Husband did not have full knowledge of her affair, and therefore, Husband did not have the ability to condone her behavior.  Wife testified that she and Husband were both confronted by Mrs. Wright before the affair occurred.  The fact that Husband alleged the affair in his responsive pleadings, in his affidavit, and at his deposition did not amount to proof that he had full knowledge of the affair while maintaining the marital relationship.  Husband testified that his suspicions regarding the affair were never confirmed until Wife admitted to it in her deposition.  There was no evidence in the record that Husband stayed in the marital relationship with full knowledge of the affair; thus, the family court erred in finding Husband had condoned Wifes adultery.
Because the record contains sufficient evidence of Wifes adultery and the court erred in finding condonation, we find Husband successfully established recrimination as a defense to Wifes request for a divorce based on adultery.  Thus, the grant of a divorce based upon this ground is reversed.  
However, the parties moved at the final hearing to amend their pleadings to include the ground of one years separation.  Because the parties lived separate and apart for more than one year prior to the final hearing, we find that a divorce based on that ground appropriate.  S.C. Code Ann. § 20-3-10(5) (1976) (allowing a divorce [o]n the application of either party if and when the husband and wife have lived separate and apart without cohabitation for a period of one year.).  Accordingly, the family courts order is modified to grant the parties a divorce based upon one years separation.
II. Alimony
Husband argues the family court erred in awarding Wife alimony.  Specifically, he argues: (1) Wife should have been barred from receiving alimony due to her adultery; (2) Wifes conduct contributed significantly to the break-up of the marriage; (3) Wife received substantial income from her disability insurance in addition to her ability to earn income from other employment; and (4) Husband did not have the ability to pay Wife alimony due to the substantial decline in his income from prior years.  Husband also contends even if the family court did not err in awarding Wife alimony, it erred in awarding her $4,000 per month in alimony, in awarding her alimony in the form of medical insurance, and in ordering him to maintain life insurance to secure Wifes alimony award.  We agree.
A family court may award temporary or permanent spousal support in the form of alimony.  S.C. Code Ann. § 20-3-130(B) (Supp. 2004).  There are several factors the family court must consider in making an alimony award.  S.C. Code Ann. § 20-3-130(C) (Supp. 2004) (listing thirteen factors for the court to consider and weigh as it deems appropriate).  Alimony may not be awarded to a spouse who commits adultery before . . . (1) the formal signing of a written property or marital settlement agreement or (2) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties.  S.C. Code Ann. § 20-3-130(A) (Supp. 2004).  However, an adulterous spouse will not be barred from receiving alimony when the accusing spouse condoned the adultery. 
Grubbs v. Grubbs, 272 S.C. 138, 140-41, 249 S.E.2d 747, 748-49 (1978); Doe v. Doe, 
286 S.C. 507, 512, 334 S.E.2d 829, 832 (Ct. App. 1985).
Wife admitted she committed adultery during the marriage.  Although alimony will not be barred for a spouse whose adultery is condoned, as determined above, we find Wife did not prove Husbands condonation of her adultery.  Thus, we find Wife is barred from receiving alimony.  In addition, because medical insurance coverage is awarded as a form of alimony, we also find the family court erred in ordering Husband to maintain Wifes medical insurance.  See 
Sharpe v. Sharpe, 307 S.C. 540, 542-43, 416 S.E.2d 215, 216-17 (Ct. App. 1992) (treating courts order requiring a husband to pay his wifes medical insurance as a form of alimony).  Finally, because the court ordered Husband to maintain life insurance to secure Wifes alimony award, we now find this requirement unnecessary.  
Thus, we reverse the family courts award of alimony, order requiring Husband maintain Wifes health insurance coverage, and order requiring Husband to maintain life insurance to secure the alimony.  
III. Valuation of Marital Assets 
Husband argues the family court erred in its valuation of certain marital assets.  Specifically, Husband asserts the family court failed to take into account significant depreciation in certain marital assets between the commencement of the marital litigation and the trial.  
Section 20-7-473 of the South Carolina Code (Supp. 2004) defines marital property as: all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation as provided in § 20-7-472 regardless of how legal title is held, noting certain exceptions.  Thus, marital property subject to equitable division is valued at the time of the commencement of the marital litigation. 
Fields v. Fields, 342 S.C. 182, 186, 536 S.E.2d 684, 686 (Ct. App. 2000).  However, it is equally well settled that the parties to domestic litigation are entitled to share in any appreciation or depreciation in marital assets occurring after separation but before divorce. 
Hatfield v. Van Epps, 358 S.C. 185, 194, 594 S.E.2d 526, 531 (Ct. App. 2004).  
A.   Checking Account 
Husband argues the family court erred in its valuation of Husbands Regions Bank checking account.  He contends although the family courts valuation reflects the value at the date the marital litigation was filed, $43,357, it failed to account for a $25,000 check to the Internal Revenue Service, a $10,000 check to the State of Georgia for estimated taxes, and a $9,788 payment to American Express for debt incurred on Husbands corporate credit card.  Husband asserts these checks were in transit at the commencement of the marital litigation and, therefore, were not reflected in the balance indicated on the bank statement provided to the court.
The family court noted in its table of marital assets and liabilities that the balance in the Regions Bank checking account did not include these in transit checks.  The court noted that the two checks for the taxes and the check for the American Express bill were included in the parties marital debts with credit given to Husband for paying these obligations in apportionment.    
We agree with the family courts determination that although the checking account balance at the time of filing does not reflect these in transit checks, the debts to which these checks relate are properly included in its valuation of the marital debts.  Thus, we find no error with the family courts valuation of Husbands Regions Bank checking account. 
B.   Rollover IRA 
Husband asserts the family court erred in its valuation of his American Express IRA rollover account.  Husband maintains his statement dated October 27, 2000, more accurately reflects the value of this account on the date of filing.  
During the trial, Wifes expert, a CPA, testified she only received statements dated May 26, 2000, reflecting a balance of $19,830.05 and dated October 27, 2000, reflecting a balance of $3,189.93.  She stated she used the May 2000 balance because she could not substantiate the decrease in the values between these two dates.  Wifes attorney then introduced the May 2000 statement into evidence without objection by Husband.  The family courts order reflects its adoption of the CPAs valuation at $19,830.05.  The court noted the value on October 27, 2000 was $3,189.93, but it could not substantiate the decrease in this account.  
Husband did not introduce any evidence of the $3,189.93 balance during the trial other than his own testimony.  However, Wife did not object when he introduced a statement dated September 29, 2000, reflecting a balance of $12,353.11.  Because marital property is valued as of the time of the commencement of the marital litigation, we find the September 29, 2000 statement, which is dated just a few weeks prior to the October 17, 2000 filing of this matter, better reflects the value for purposes of valuation of the couples marital property.  Thus, we reverse the family courts valuation of this asset and modify it to reflect the $12,353.11 value. 
C.   Scientific Ag Industries Stock 
Husband asserts the family court erred in its valuation of his Scientific Ag Industries stock.  He contends this asset had no value at the time the marital litigation commenced.  We disagree. 
Wifes CPA stated she valued this asset at $25,200 based on its purchase price in September 1999.  She testified she used the purchase price to value the asset because it was the only evidence of the value she was provided.  Husband did not provide any evidence, other than his own testimony, indicating the stock was worthless.  In addition, Husband introduced a 2000 K-1 statement indicating his capital account contained a $25,200 balance.  Based on the evidence in the record, the family court did not err in valuing his investment in Scientific Ag Industries.  
D.   American Express Stock 
Husband argues the family court erred in its valuation of his American Express stock.  He asserts the family court should have valued his holdings as of the date of the trial, reflecting the decrease in the market value between the commencement of the marital litigation and the trial.  We disagree. 
On November 13, 2000, the family court held a hearing on Wifes motion for temporary relief and discovery.  After the hearing, the family court issued an order that, among other things, awarded Wife 400 shares of Husbands American Express stock.  Wife introduced a statement reflecting Husband held approximately 1,197 shares of American Express stock with a market value of $66,913.32 as of November 13, 2000.  Because the division of this asset occurred at the time of the pendente lite order, we find the family courts valuation of the asset as of that date appropriate and find no error in the courts valuation of $66,913.32.  
While the family courts overall valuation of the stock was appropriate, we note that in dividing the property between Husband and Wife, the family court appears to have listed the value of the stock at the time Wife sold the shares awarded to her after the pendente lite order.  These numbers should be corrected to reflect the value of the stock at the time the shares were awarded.  Thus, we find the correct apportioned values to be $22,350, rather than $18,890, to Wife and $44,563, rather than $37,565, to Husband. 
E.   Other Personal Property
Husband argues the family court erred in valuing his interest in a timeshare located in Kentucky, a deck boat, Wifes Mustang, and his Jeep.  We disagree. 
Husband solely points to his own testimony to assert the family court erred in valuing these assets.  In our review of the record, we conclude the family court adopted the valuations asserted by Wife in her financial declaration.  Thus, it appears the family court based its determination on the credibility of the witnesses.  Because we give great deference to the family court, which heard and saw the witnesses, to determine the credibility of the witness, we find no error in its valuation of these items.  See 
Scott v. Scott, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003) (holding where there is disputed evidence, the appellate court may adhere to the findings of the family court.  Because the family court is in a superior position to judge the witnesses demeanor and veracity, its findings should be given broad discretion.)(citations omitted). 
F. 2001 Income Tax Liability
Husband argues the family court erred in failing to consider the 2001 income tax liability in apportioning the marital property.  We disagree. 
In apportioning marital property, the family court must consider liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage.  S.C. Code Ann. § 20-7-472(13) (Supp. 2004).  This statute creates a rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is a marital debt and must be factored in the totality of equitable apportionment.  Wooten v. Wooten, 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005).

When a debt is incurred after the commencement of litigation but before the final divorce decree, the family court may equitably apportion it as a marital debt when it is shown the debt was incurred for marital purposes, i.e., for the joint benefit of both parties during the marriage.  When a debt is incurred after marital litigation begins, the burden of proving the debt is marital rests upon the party who makes such an assertion.

Id. at 547, 615 S.E.2d at 105 (citations omitted).  
Wife filed for divorce in October 2000, thus the 2001 income tax liability was incurred after the commencement of the marital litigation.  Husband provided no evidence indicating he and Wife incurred the 2001 income tax liability for their joint benefit.  In addition, Husband provided no evidence of the income tax liability or the amount.  He solely pointed to Wifes CPAs acknowledgment that the 2001 income tax liability existed and that she was not aware of any payments toward that liability.  Thus, we find no evidence in the record to support Husbands contentions and find no error by the family court in failing to consider the alleged 2001 tax liability. 
To summarize our findings regarding valuation of marital assets, we reverse the family courts valuation of Husbands Rollover IRA and find $12,353.11 to be the correct value of this marital asset.  In addition, we modify the family courts apportioned values for American Express stock, finding the portion received by Wife to be valued at $44,563 and the portion received by Husband to be valued at $22,350.  We affirm the family courts valuations of all other assets disputed by Husband. 
IV. Equitable Apportionment
Husband argues the family court erred in apportioning the marital property.  He asserts the family courts distribution was in error because:  (1) the family court erred in its valuation of the marital assets;  (2) his adultery did not contribute to the break-up of the marriage or affect the economic circumstances of the marriage; (3) it failed to take into account the contributions of the parties during the marriage; and (4) the award of the marital home constituted an abuse of discretion because the parties had no children and the home was the most substantial asset owned by the parties. We disagree. 
Section 20-7-472 of the South Carolina Code (Supp. 2004) requires the family court to consider fifteen factors in apportioning marital property, but the court is allowed to weigh those factors as it deems appropriate.  In reviewing the family courts equitable apportionment, an appellate courts role is to examine the fairness of the apportionment as a whole. 
Bragg v. Bragg, 347 S.C. 16, 24, 553 S.E.2d 251, 255 (Ct. App. 2001).  The family courts apportionment will not be disturbed on appeal absent an abuse of discretion.  Id. at 23, 553 S.E.2d at 255.  This court will affirm the family court judge if it can be determined that the judge addressed the factors under section 20-7-472 sufficiently for us to conclude he was cognizant of the statutory factors.  Jenkins v. Jenkins, 345 S.C. 88, 100, 545 S.E.2d 531, 537 (Ct. App. 2001). 
We find the family court addressed all of the appropriate factors in its order and did not abuse its discretion.  At the time of the trial, Husband was 43, Wife was 53, and the parties had been married for twelve years.  Wife is a breast cancer survivor who underwent reconstructive surgery as a result of her cancer.  She suffered from complications due to her reconstructive surgery requiring her to endure numerous surgeries on her back.  At the time of the trial, Wife continued to suffer from back pain, hip problems, arthritis, and asthma.  In 1996, Wifes physician declared her disabled, she discontinued her work as a court reporter, and she began receiving disability benefits from her disability insurance policy.  Since then, Wife asserts her disability prohibits her from earning an income outside of the disability benefits, which at the time of the trial amounted to $2,059 per month.  Without the ability to earn an income, Wife is unlikely to have the ability to acquire assets in the future.  
Husband, on the other hand, also underwent back surgery, but it does not appear to have affected his ability to work.  Wifes CPA testified Husbands net income for 1999 and 2000 was $255,052 and $277,926, respectively.  Husband testified due to changes in his employers compensation system and increase in his business expenses, his income was expected to decrease significantly.  Wifes CPA determined Husbands expected net income for 2001 would be $121,459 taking into account these changes.  The record indicates Husband provided a greater amount in the way of direct contributions to the marriage since Wifes disability in 1996.  But, until Wifes disability, Wife owned and operated her own business and made significant direct contributions.  After her disability, the record indicates she continued to provide direct contributions to the marriage through her disability benefits.  Neither party participates in an employer sponsored retirement plan.  However, Husband is eligible for a deferred compensation plan, which the family court valued at $39,940.  In addition, Husband has IRAs and other retirement investments valued at approximately $44,730, while Wife has an IRA valued at $455.  The family court considered the marital debt valued at approximately $453,000 and apportioned it forty-nine percent to Wife and fifty-one percent to Husband, taking into account the debt associated with the assets assigned to each.   
Although the family court erroneously determined Husband condoned Wifes adultery in granting Wifes request for a divorce based on Husbands adultery, it specifically stated it made its decision regarding apportionment of the marital property absent of Husbands adultery.  The family court granted Wifes request for alimony and ordered Husband to pay $4,000 per month in addition to providing Wife with health insurance coverage.  As explained, we reverse the family courts award of alimony and thus, we also consider this fact in apportioning the marital property.  
The parties did not have significant nonmarital property or prior support obligations.  No children were produced from the marriage, and therefore, custody was not an issue.  Finally, the parties did not identify any significant tax consequences arising out of the equitable apportionment.  
Based on the record before us, especially considering Wifes health problems and inability to earn income in the future, the family court did not abuse its discretion in apportioning the marital property.  Given the adjustments to the valuation of Husbands Rollover IRA and the American Express Stock, we find the court apportionment of sixty-eight percent of the marital estate to Wife and thirty-two percent of the marital estate to Husband to be fair under the circumstances.  
As for Husbands contentions regarding the marital home, we find them without merit.  Initially, we note Husbands argument that the family courts decision was in error because no children were produced from the marriage harkens to an award of the marital home for a specified period of time as an incident of support.  However, the family court did not award the marital home as an incident of support, but rather awarded the equity in the marital home as part of its equitable apportionment of the marital property.  
A family court may require the sale of marital property and a division of the proceeds in order to equitably divide the marital estate.  However, the court should first try to make an in-kind distribution of the marital assets, i.e., award a share of each type of asset to each spouse. 
Wooten, 364 S.C. 532, 542, 615 S.E.2d 98, 103 (citations omitted).  Nevertheless, a family court may grant a spouse title to the marital home as part of the equitable distribution because it is not feasible to make an in-kind distribution of the home.  Id.  The Wooten court went on to distinguish an award of the marital home as an incident-of-support from an award of the marital home as part of the equitable distribution:

The incident-of-support cases are largely irrelevant in deciding whether the marital home should be awarded to one spouse in the equitable division of marital property.  A decision on whether to award the marital home to one spouse for a defined period as an incident of support and a decision on whether to award the home permanently to one spouse in equitable distribution require different analyses.  While it is proper for the family court to consider support-related facts in both settings, the lack of a support-related rationale should not necessarily prevent or reduce the likelihood of an award of the marital home to one spouse in equitable distribution.
Instead, as we have done in deciding these appeals, the family court should focus on a fair distribution of the entire marital estate.

Wooten at 543-44, 615 S.E.2d at 103-04.  Thus, regardless of whether the couple had children, we find no abuse of discretion in the family courts overall apportionment of the marital property.  
V.  Contempt
Husband argues the family court erred in finding him in contempt of court for failing to comply with its order to pay alimony.  He asserts he did not have the ability to pay Wife alimony; thus, his noncompliance was not willful.   
The family court has exclusive jurisdiction: In all cases or proceedings within the county against persons charged with failure to obey an order of the court made pursuant to authority conferred by law.  S.C. Code Ann. § 20-7-420(13) (1976).  Thus, the family court had jurisdiction to hold Husband in contempt for failure to comply with his alimony obligation.  
An appellate court may reverse a trial courts decision regarding contempt only if it is without evidentiary support or it finds the trial court abused its discretion. 
Durlach v. Durlach, 359 S.C. 64, 70, 596 S.E.2d 908, 912 (2004).  Willful disobedience of a court order may result in contempt.  A willful act is one done voluntarily and intentionally, with the specific intent of doing something the law forbids.  Id. at 71, 596 S.E.2d at 912 (citations omitted).  Before a court finds a person in contempt, the record must clearly and specifically reflect the contemptuous conduct. 
Brasington v. Shannon, 288 S.C. 183, 184, 341 S.E.2d 130, 131 (1986).  In a proceeding for contempt for violation of a court order, the moving party must show the existence of the order and the facts establishing the respondents noncompliance.  The burden then shifts to the respondent to establish his defense and inability to comply with the order.  Id. (citations omitted).  Failure by an obligated spouse to make alimony payments required by court order constitutes a prima facie case for contempt. 
Dunson v. Dunson, 278 S.C. 210, 213, 294 S.E.2d 39, 40 (1982).  
At the contempt hearing, Husband acknowledged his awareness of the court order requiring him to pay Wife alimony.  In addition he admitted he had not paid alimony in over three months.  He simply maintained he did not have the funds to pay it.  However, Husband admitted he received approximately $20,000 to $25,000 during that same period of time.  In addition, he admitted taking several trips during the period he stopped paying alimony, including trips to Hawaii and California.  Thus, based on the evidence in the record, we find Husband failed to establish a defense of his inability to comply with the family courts order, and the family court did not abuse its discretion in finding Husband in contempt. 
Although we find the family court did not abuse its discretion in holding Husband in contempt, we must vacate its order.  Generally, reversal of a judgment on appeal has the effect of vacating the judgment and leaving the case standing as if no such judgment had been rendered.  Consequently, a party who receives payment under a judgment subsequently reversed must restore whatever advantage he obtained thereby to his adversary. 
Brown v. Brown, 286 S.C. 56, 57, 331 S.E.2d 793, 793-94 (Ct. App. 1985) (citations omitted).  Therefore, given our decision to reverse the family courts award of alimony under the divorce decree, Wife would not be entitled to receive the alimony Husband failed to pay under the contempt order.  Accordingly, we vacate the family courts order finding Husband in contempt.
VI. Attorneys Fees and Costs 
Husband argues the family court erred in requiring him to pay $30,000 of Wifes attorneys fees and costs, in addition to $9,000 for Wifes expert witness.  Primarily, he asserts the discovery difficulties alluded to by the court did not exist.  In addition, Husband contends Wife incurred a majority of her attorneys fees in preparation for trial after discovery and his failure to produce information relating to the Scientific Ag Industries stock was inadvertent.  
The family court has statutory authority to award attorneys fees.  S.C. Code Ann. § 20-7-420(38) (Supp. 2004).  An award of attorneys fees rests within the sound discretion of the trial judge and should not be disturbed on appeal unless there is an abuse of discretion.  Patel v. Patel, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004).  In determining whether to award attorneys fees, the court should consider each partys ability to pay, whether beneficial results were obtained by the attorney, the financial conditions of the parties, and the effect of the attorneys fees on each party.  Griffith v. Griffith, 332 S.C. 630, 645, 506 S.E.2d 526, 534 (Ct. App. 1998).  In determining what amount of attorneys fees should be awarded, the court should consider the nature, extent, and difficulty of the services rendered; the time necessarily devoted to the case; the professional standing of counsel; the contingency of compensation; the beneficial results obtained; and the customary legal fees for similar services.  Id. at 645-46, 506 S.E.2d at 534.
The record indicates Wife incurred $28,972.99 in attorneys fees and costs.  These fees did not include Wifes CPAs expert fee of $10,249.60 or the balance due to Wifes appraiser of $350.  The family court ordered Husband to pay $30,000 to Wife in attorneys fees and costs in addition to $9,000 towards Wifes CPAs fees and $350 towards Wifes appraisers fees.   
In light of our decision to reverse the family courts award of alimony to Wife, we find it appropriate to reconsider the family courts award of attorneys fees and costs to Wife.  See 
Rogers v. Rogers, 343 S.C. 329, 334, 540 S.E.2d 840, 842 (2001) ([S]ince the beneficial result obtained by counsel is a factor in awarding attorneys fees, when that result is reversed on appeal, the attorneys fee award must also be reconsidered.).  Accordingly, we remand the matter to family court to reconsider the Wifes award of attorneys fees and costs.  Further, in light of our decision that alimony was inappropriate in this case, the family court should also consider on remand whether the alimony payments Husband made to Wife should be set-off against any award of attorneys fees and costs.  See Brown, 286 S.C. at 57, 331 S.E.2d at 793-94 ([A] party who receives payment under a judgment subsequently reversed must restore whatever advantage he obtained thereby to his adversary.).
VII.  Request of Modification 
Finally, Husband argues the family court erred in initially failing to assert jurisdiction over his request for modification of his alimony obligation and in denying his request to modify his alimony obligation.  Given our decision to reverse the family courts decision to award Wife alimony we need not address these arguments.  
CONCLUSION
The family court erred in awarding Wife a divorce based on Husbands adultery because Husband sufficiently established a defense of recrimination due to Wifes adultery.  Thus, we reverse the family courts decision to grant Wifes divorce based on this ground.  However, we find the parties were entitled to a divorce based on one year of continuous separation.  Because we find Wife committed adultery, she is barred from receiving alimony.  Therefore, we reverse the family courts award of alimony to Wife.  The family courts valuation of Husbands Rollover IRA was in error.  We find the correct value of this asset to be $12,353.11.  We find no error in the family courts valuation of the other disputed marital assets, but we correct its allocation of the American Express stock in accordance with its valuation.  The family court did not abuse its discretion in apportioning the marital property.  In light of our determinations, we remand this matter to the family court to reconsider the award of attorneys fees to Wife and the appropriateness of a set-off of alimony paid.  Finally, based on our reversal of the family courts award of alimony to Wife, we need not address Husbands arguments concerning modification of Wifes alimony award and we vacate the family courts order finding Husband in contempt.  Accordingly, the family courts orders are 
AFFIRMED IN PART, MODIFIED IN PART, REVERSED IN PART, VACATED IN PART, and REMANDED IN PART.  
GOOLSBY, BEATTY, and SHORT, JJ., concur.